|  | ) |  |
|---|---|---|
|  | ) |  |
| LHP, LLC and DAVID FIALA, | ) | No. 16 C 8913 |
|  | ) |  |
| Plaintiffs, | ) | Judge Virginia M. Kendall |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| CHASE BANK USA, N.A., | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## MEMORADUM OPINION AND ORDER

For the reasons set forth below, Chase Bank USA, N.A.'s ("Chase") Motion to Dismiss [17] is granted in its entirety. Specifically, Counts I and II are dismissed without prejudice. If Plaintiffs are able to replead with the appropriate specificity for Counts I and II, they shall do so on or before 12/23/16 or the Counts shall be dismissed with prejudice. Counts III, IV, and V are dismissed with prejudice.

## BACKGROUND

The Court takes the following allegations from the Complaint and treats them as true for the purposes of the Defendant's motion. *See Gillard v. Proven Methods Seminars, LLC*, 388 F. App'x 549, 549-50 (7th Cir. 2010).

In February 2010, Plaintiff David Fialia, who owns and operates Plaintiff LHP, LLC ("LHP"), entered into a credit card agreement called a Business Card Agreement with Chase connected to LHP's business bank account. (*See* Dkt. No. 1-1 at ¶¶ 3-4, 7; *see also id*. at 20-23.) Chase, through its agents, marketing materials, and corporate communications, represented to the Plaintiffs that they would not be held responsible for fraudulent transactions on their business

credit card.(*Id*. at ¶ 8-9.)  Chase made a number of representations, including that "Banks are like partners with the clients, and they are often active participants in their clients' financial affairs." (*Id*. at ¶ 10.)

In 2012, LHP added Don Smith and Emily Burgess, two now-former employees, to the business account.  Chase issued business credit cards to Burgess and Smith that were meant to be used solely to purchase goods and services connected to LHP's business.  (*Id*. at ¶ 11-12.)  Smith was also a managing member of D.S.S. Heating and AC, LLC.  LHP was a customer of DSS Heating.  (*Id*. at ¶ 13.)  DSS Heating was authorized to make charges to LHP's Account in instances where goods or services were provided to or on behalf of LHP.  (*Id*. at ¶ 14.)  Beginning in July 2012, DSS Heating began to make unauthorized charges on LHP's Account using Smith and Burgess's business credit cards.  (*Id*. at ¶ 16.)  Between July 2012 and October 2012, DSS Heating initiated more than fifteen unauthorized charges totaling in excess of $30,000 even though it did not provide LHP with any goods or services related to the transactions.  (*Id*. at ¶¶ 17-18.)  In October 2012, Fiala, notified Chase of the charges.  Following an internal investigation, Chase removed the majority of the transactions and successfully recovered $7,700 of the fraudulent charges from DSS Heating.  (*Id*. at ¶¶ 20-21.)  After DSS Heating went out of business, Chase determined that the remaining outstanding charges were valid, refused to credit LHP's Account beyond the $7,700 and held LHP and Fiala personally liable for the remaining charges.  (*Id*. at ¶ 23.)

After the Plaintiffs filed a police report, Smith, in June 2013 and as a principal of DSS Heating, admitted that he had initiated the fraudulent transactions and that no goods or services were provided to LHP as part of the transactions.  (*Id*. at ¶¶ 24-26; *see also id*. at pp. 24-26

(Smith affidavit).)  Smith was later indicted for and convicted of fraud in Nebraska.[1]  (*Id*. at ¶ 27.)  LHP continued to communicate with Chase throughout 2013 regarding the unauthorized charges, but the Chase representatives were uncooperative, refused to return phone calls, and otherwise failed to provide documentation regarding the charges.  (*Id*. at ¶¶ 28-29.)  Chase reported the balance on the account to credit reporting agencies, damaging Fiala's small business and ability to gain credit.  (*Id*. at ¶ 30.)

This case was originally filed in the Circuit Court of Cook County and was subsequently removed to this Court.  (*See* Dkt. No. 1.)

## LEGAL STANDARD

A complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face to survive a 12(b)(6) challenge.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm.  *Id.*  The complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations.  *Christensen v. Cty. of Boone, IL*, 483 F.3d 454, 458 (7th Cir. 2007) (citations omitted).  In making the plausibility determination, the Court relies on its "judicial experience and common sense."  *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 679).  For purposes of this motion, this Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## DISCUSSION

The Complaint alleges five causes of action sounding in fraud (Count I), violation of the Illinois Consumer Fraud Act ("ICFA") (Count II), negligent misrepresentation (Count III),

---

[1] The Complaint does not indicate whether his conviction was related to this case.

breach of contract (Count IV), and declaratory judgment (Count V).  (*See* Dkt. No. 1-1.)  Chase

moves to dismiss the Complaint in its entirety.[2]  (*See* Dkt. No. 17.)

## I.  Count I – Fraud

In Count I, Plaintiffs contend that Chase falsely represented its "zero liability fraud

protection" service by representing that there would be no liability or obligation to pay for

unauthorized transactions for which no goods or services were purchased.  (*See* Dkt. No. 1-1 at

¶¶ 33-47.)  To state a claim for common law fraud, Plaintiffs must plead facts supporting an

inference that: "(1) the defendant falsely represented or omitted facts that the defendant had a

duty to disclose; (2) the defendant knew or believed that the representation was false or made the

representation with a reckless indifference to the truth; (3) the defendant intended to induce the

plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the

representation; and (5) the plaintiff was injured by its reliance."  *See, e.g.*, *Universal Am. Corp.*

*v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 400 (D. Del. 2016).   In

addition, pursuant to Federal Rule of Civil Procedure 9(b), fraud claims must be pled with

particularity.  *See U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106

(7th Cir. 2014), *cert. denied*, 136 S. Ct. 49 (2015) ("The complaint must state the identity of the

person making the misrepresentation, the time, place, and content of the misrepresentation, and

the method by which the misrepresentation was communicated to the plaintiff.") (citations and

internal quotations omitted).

---

[2] Based on the choice of law provision in the Agreement, Delaware law applies.  (*See* Dkt. No. 1-1 at 23 ("The terms and enforcement of this Agreement and your account shall be governed and interpreted in accordance with Federal law and, to the extent state law applies, the law of Delaware, without regard to conflict-of-law principles, the law of Delaware, where we and your account are located, will apply no matter where you live or use the account."); *see also Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015) (applying Delaware law to state law claims pursuant to choice of law provision).

Chase argues that Plaintiffs' fraud claim must be dismissed because it fails "to specify who from Chase made these allegations, where they were supposedly made, what specifically was stated, when it was said, and how these unidentified statements were purportedly conveyed." (Dkt. No. 18 at 7.) Indeed, the fraud section of the Complaint does not state any such allegations, but rather simply restates facts from elsewhere in the Complaint. (*See, e.g.,* Dkt. No. 1-1 at ¶ 38 ("As described herein, during 2012, DSS HAC initiated in excess of fifteen (15) charge transactions to LHP's Business Account, totaling in excess of $30,000.00."); *id.* at ¶ 44 (alleging again that Smith unequivocally admitted to merchant fraud).) The Plaintiffs' failure to provide such details renders the Complaint insufficient to meet the Rule 9(b) requirements and the purposes underlying those requirements. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) ("The rule is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party.").

In response, Plaintiffs argue that they are unable to state such specific allegations because they simply do not have the requisite information in their possession at this stage of the litigation. (*See* Dkt. No. 26 at 2-3.) While the Court is "sensitive to information asymmetries that may prevent [Plaintiffs'] from offering more detail" in their Complaint, *see Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013), the Plaintiffs fail to adequately explain what information is beyond their reach. The Plaintiffs' only example is that "due to Defendant's complex corporate structure, Plaintiffs are unable to yet identify which employee(s) of Defendant made the alleged fraudulent representation." (Dkt. No. 26 at 3.) This is precisely why Rule 9(b) exists – to prevent blanket allegations of fraudulent representations without linking them to a specific individual, document, or statement. In order to provide the defendant

an opportunity to defend against such allegations, specificity is required. Unlike Plaintiffs'

allegation that this information is within the unique control of Chase, the specificity of what

statement was made, by whom, and how and when it was made, is uniquely in control of the

recipient of the statement. If Plaintiffs' claim is that they relied on this false representation, then

it is Plaintiffs who will know when they heard, read, or saw the false statement and who

conveyed it to them, not defendants. Even if the Plaintiffs are unable to identify who made the

representations (although there is no reason they should not be able to), the Complaint

nevertheless fails to provide any detail regarding what those other misrepresentations were,

where they were made, and when they were made, among other issues. *See Camasta v. Jos. A.*

*Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (holding that plaintiff's allegations failed

to satisfy Rule 9(b) where the evidence showed a number of sale promotions but did not show a

"constant or perpetual sale of any particular merchandise.").

As such, Count I is dismissed without prejudice. If Plaintiffs are able to replead with the

appropriate specificity, they shall do so on or before 12/23/16 or the Count shall be dismissed

with prejudice.

## II.    Count II – Illinois Consumer Fraud Act

Plaintiffs next allege that Chase violated the ICFA by representing but failing to honor its

zero liability fraud protection plan. (*See* Dkt. No. 1-1 at ¶¶ 48-59.) To plead a violation under

the ICFA, Plaintiffs must allege: "(1) a deceptive act or practice by the defendant, (2) the

defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in

the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5)

proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002).

In addition, because Plaintiffs' claim sounds in fraud, the claim must meet the particularity

requirements of Rule 9(b). *See, e.g.*, *O'Brien v. Landers*, No. 1:10-CV-02765, 2011 WL 221865, at \*4 (N.D. Ill. Jan. 24, 2011) ("This particularity requirement applies to claims of deception made under the ICFA."); *see also*, *e.g. Livingston v. Trustgard Ins.*, 988 F. Supp. 2d 873, 879 (N.D. Ill. 2013), *aff'd sub nom. Livingston v. Trustguard Ins.*, 558 F. App'x 681 (7th Cir. 2014).

Plaintiffs do not dispute that the heightened standard applies, but rather assert again that they have "specifically identified Chase's deceptive and fraudulent acts." (Dkt. No. 26 at 7.) However, as discussed above, the Complaint fails to meet the Rule 9(b) requirements.

Accordingly, Count II is dismissed without prejudice.

## III.    Count III – Negligent Misrepresentation

Plaintiffs next argue that Chase negligently misrepresented its zero liability fraud protection by stating that there would be no liability or obligation to pay for unauthorized transactions. (Dkt. No. 1-1 at ¶¶ 60-75.) To state a claim for "negligent misrepresentation under Delaware law, a plaintiff must show: (1) the existence of a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) that the plaintiff suffered a pecuniary loss caused by reliance upon the false information." *See, e.g., Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 525 (D. Del. 2012).

Chase moves to dismiss the claim on two grounds: first, that it is barred by the Delaware economic loss doctrine and second, that Plaintiffs fail to state sufficient facts to establish the essential elements of the claim. (Dkt. No. 18 at 11-12.) The economic loss doctrine "is a judicially created doctrine that allows a party to recover in tort only if losses are accompanied by bodily harm or property damage; in other words, the doctrine prevents plaintiffs from recovering in tort for losses suffered that are solely economic in nature." *See, e.g., Kuhn*, 844 F. Supp. 2d at

526. Plaintiffs do not dispute that the doctrine applies, but rather argue that their claim falls under a narrow exception because Chase supplied them with false information for "guidance…in their business transactions." *See, e.g., id.* (citing Restatement (Second) of Torts § 552 (1977)).[3] Delaware courts construe Section 522 strictly and narrowly apply it only if two elements are met: first, that the defendant supplied the information to the plaintiff for use in a business transaction with a third party, and second, that Chase is in the business of supplying information. *See Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.*, No. CIV.A. 98C-02-217WCC, 2002 WL 1335360, at \*6 (Del. Super. Ct. June 13, 2002).

Although the parties spend significant time briefing the second requirement, they entirely overlook the first element that Chase must have supplied information to the Plaintiffs to use in a business transaction with a *third party*. The Complaint does not allege that Chase provided information regarding its zero liability fraud protection so that Plaintiffs could use it in a business transaction with a third party or that Plaintiffs did in fact use that information in such a business transaction. Rather, Plaintiffs allege only that had they known that Chase "did not intend to honor the zero liability fraud protection representation and would instead hold Plaintiffs liable and obligated to pay for unauthorized and admitted fraudulent charges, Plaintiffs would not have entered the Business Card Agreement." (*See* Dkt. No. 1-1 at ¶ 73; *see also id.* at ¶ 11 (Plaintiffs alleging that they added Smith and Burgess to the Account, but failing to allege that they relied upon or used information received from Chase in making that decision).) Such allegations are insufficient to meet the first element of the exception. *See Danforth v. Acorn Structures, Inc.,* No. CIV. A. 90C-JN-30, 1991 WL 269956, at \*2 (Del. Super. Ct. Nov. 22,

---

[3] Section 552 provides: "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

1991) (denying application of the exception where plaintiff "did not and does not claim that he took Acorn's information in the agreement and in *any way* used that with a third party…In addition, while Danforth may have contracted with a third party, a general contractor, to build his house from the package (materials) Acorn provided, Danforth used Acorn's 'information' to sign a second contract with Acorn. That step hardly meets the test of a transaction involving a party other than the defendant."). As such, the exception is inapplicable and Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine.

Accordingly, Count III is dismissed with prejudice.

## IV. Count IV – Breach of Contract

In Count IV, Plaintiffs argue that Chase breached the Agreement by holding Plaintiffs liable for unauthorized and fraudulent charges not covered by the Agreement. (*See* Dkt. No. 1-1 at ¶¶ 76-85.) "Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiffs." *See, e.g., Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015) (quoting *WaveDivision Holdings, LLC v. Millennium Digital Media Systems, L.L.C.*, Civ. No. 2993–VCS, 2010 WL 3706624, at *13 (Del. Ch. 2010)).

Chase argues that Plaintiffs failed to sufficiently allege facts that it breached the Agreement. Specifically, Chase contends that despite Plaintiffs' claim that the charges were unauthorized and fraudulent, the Plaintiffs specifically admit that they designated Smith as an authorized user on the Account such that Smith had authority to make charges on the Account. (*See* Dkt. No. 18 at 13; Dkt. No. 1-1 at ¶¶ 7, 11.) Chase's position is consistent with a plain reading of the Agreement, which states in relevant part that: "You[4] are solely responsible for all

---

[4] The Agreement defines the words "you," "your," and "yours" as everyone responsible for the Account, including the person that opened the account, in this case, the Plaintiffs. (*See* Dkt. No. 1-1 at 20.)

transactions on your Account made by you or authorized users"; "If you let anyone use your Account, that person is an authorized user…You are responsible for all use of your Account including charges by authorized users"; and "You will be legally obligated to pay for all purchasers, cash advances, and all fees and charges incurred on the Account, from the opening of the Account." (*See* Dkt. No. 1-1 at 20.) Given that Plaintiffs specifically allege that the Plaintiffs themselves added Smith and Burgess to the Account and "caused a business card to be issued to Smith in his name and a business credit card to be issued to Burgess in her name," there is no dispute that any transactions initiated and completed by Smith, including those underlying this case, are considered to be authorized under the Agreement. (*Id*. at ¶¶ 11, 20 (Agreement further stating that "You will be liable for all amounts incurred by any authorized user (whether billed or unbilled) prior to the time that (a) you have contacted us verbally (and confirm such verbal notification in writing within five (5) business days) advising us that such authorized user is no longer authorized to use the card or Account, and (b) you obtain the card, if applicable, issued to such an authorized user and return it to us.").)

Plaintiffs' counterargument that Smith completed the transactions without their authorization and later admitted to fraudulently doing so is immaterial because the Agreement specifically provides that the Plaintiffs, and not Chase, are responsible for any charges made by authorized users. (*Id*. at 20.) Plaintiffs also argue that Chase breached their Agreement by falsely representing that zero liability fraud protection would bar any liability or obligation on the Plaintiffs' part to pay for unauthorized charge transactions "for which no goods or services are purchased." (*See* Dkt. No. 26 at 14.) Not only is there nothing in the Agreement indicating that payment is only due if goods or services are purchased, but the argument itself rests on the premise that the charges were unauthorized, which as discussed above, is not the case.

Accordingly, because Chase acted consistently with the Agreement, Count IV is dismissed with prejudice.

**V.      Count V – Declaratory Judgment**

Finally, Plaintiffs seek a declaratory judgment against Chase in Count V.  (*See* Dkt. No. 1-1 at 17-19.)  However, a declaratory judgment is a form of relief, not an independent cause of action.  *See, e.g., Elward v. Electrolux Home Prod., Inc.*, No. 15 C 9882, 2016 WL 5792391, at *5 (N.D. Ill. Oct. 4, 2016); *Nat'l Cas. Co. v. Utica Mut. Ins. Co.*, No. 12-CV-657-BBC, 2012 WL 5458115, at *2 (W.D. Wis. Nov. 8, 2012).  Here, Plaintiffs fail to identify any legal authority indicating that a claim for declaratory judgment alone constitutes a cause of action despite Chase raising this exact issue in its briefing.  (*See* Dkt. No. 18 at 14); *see, e.g., Chicago Police Sergeants Ass'n v. City of Chicago*, No. 08-CV-4214, 2011 WL 2637203, at *9 (N.D. Ill. July 6, 2011) ("However, Plaintiffs point to no legal authority suggesting that a declaratory judgment claim alone could state an independent cause of action. Accordingly, Count VI is dismissed.").

Dismissal is additionally appropriate because Plaintiffs' declaratory judgment claim substantially overlaps with their substantive claims.  *See, e.g., Dixie Gas & Food, Inc. v. Shell Oil Co.*, No. 03 C 8210, 2005 WL 1273273, at *7 (N.D. Ill. May 25, 2005).  Here, Plaintiffs declaratory judgment claim relies on the exact same assertions as its breach of contract claim. (*Compare*, *e.g.*, Dkt. No. 1-1 ¶¶ 79, 83 *to* ¶¶ 89, 93.)  As such, because the Court will necessarily address those issues as part of the Plaintiffs' substantive claims, dismissal of this Count is appropriate. *See, e.g., Vill. of Sugar Grove v. F.D.I.C.*, No. 10 C 3562, 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action…and courts have exercised that discretion where a plaintiff seeks a declaratory judgment that substantially overlaps its substantive claims.") (internal citation omitted).  In opposition,

Plaintiffs argue that their declaratory judgment claim is distinct from their other claims because it seeks relief separate and apart from contractual relief. (*See* Dkt. No. 26 at 15.) However, Plaintiffs fail to provide any case law in support of this position and further entirely fail to address Chase's argument that a declaratory judgment does not constitute a cause of action within itself.

Accordingly, Count V is dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Chase's Motion to Dismiss [17] is granted in its entirety. Specifically, Counts I and II are dismissed without prejudice. If Plaintiffs are able to replead with the appropriate specificity for Counts I and II, they shall do so on or before 12/23/16 or the Counts shall be dismissed with prejudice. Counts III, IV, and V are dismissed with prejudice.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 12/5/2016